KAREN P. HEWITT
United States Attorney
A. DALE BLANKENSHIP
Assistant United States Attorney
California State Bar No. 235960
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199/(619) 235-2757 (Fax)
Email: Dale.Blankenship@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Criminal Case No. 08CR0020-BTM |
| Plaintiff, | ) |
| | ) DATE:        February 1, 2008 |
| v. | ) TIME:        1:30 p.m. |
| | ) |
| JUAN RAFAEL ZAFRA-GOMEZ, | ) GOVERNMENT'S  RESPONSE  AND |
| | ) OPPOSITION TO DEFENDANT'S  MOTIONS |
| Defendant. | ) TO: |
| | ) |
| | ) (1)     COMPEL DISCOVERY; |
| | ) (2)     SUPPRESS STATEMENTS; AND |
| | ) (3)     GRANT LEAVE TO FILE FURTHER |
| | )          MOTIONS. |
| | ) |
| | ) TOGETHER WITH STATEMENT OF FACTS |
| | ) AND MEMORANDUM OF POINTS AND |
| | ) AUTHORITIES |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and A. DALE BLANKENSHIP, Assistant United States Attorney, and hereby files its Response and Opposition to the defendant's above-referenced motions together with Statement of Facts and Memorandum of Points and Authorities. This Response and Opposition is based upon the files and records of the case.

//

**I.**

**STATEMENT OF THE CASE**

On January 2, 2008, a federal grand jury for the Southern District of California returned a one-count Indictment, charging Defendant with possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Defendant was arraigned on the Indictment on January 3, 2008, and entered a not guilty plea.

**II**

**STATEMENT OF FACTS**

**A.    IMMIGRATION HISTORY**

Defendant is a citizen of Mexico.

**B.    INSTANT OFFENSE**

On October 15, 2007, at approximately 3:35 p.m., Defendant entered the San Clemente Border Patrol Checkpoint driving a 2001 Mazda MPV mini-van with California license plate number 5EAP803. United States Border Patrol (USBP) Agent Joaquin Ayala was manning lane number 1, and motioned for Defendant to stop. Agent Ayala observed the Defendant driving the vehicle and observed a passenger, later identified as Domingo Sapien-Soto, also in the vehicle. As Defendant pulled forward slowly, Agent Ayala saw Defendant lean over and speak to the passenger briefly before making a complete stop. Agent Ayala identified himself as a U.S. Border Patrol Agent and asked the Defendant his citizenship. The Defendant stated that he was a permanent resident of the United States. Agent Ayala asked Defendant for his card, and Defendant produced his permanent resident card.

Agent Ayala then asked the passenger his citizenship. Defendant stated that the passenger was a resident also. Agent Ayala asked Defendant not to speak for the passenger. Agent Ayala then asked the passenger if it was true that he also was a permanent resident. Agent Ayala asked the passenger to produce his card. Defendant then looked at the passenger and told him to show the agent his card. The passenger then pretended to look for a card in his wallet. Agent Ayala then referred the vehicle to secondary for a more thorough immigration inspection.

In secondary, USBP Agent J. Ortiz and Agent H. Gonzalez identified themselves to Defendant and the passenger. The agents questioned both individuals regarding their citizenship. Defendant

produced his permanent resident card to Agent Gonzalez. Agent Gonzalez asked Defendant about his passenger and Defendant stated that he was his good friend for many years. The passenger told Agent Ortiz that he was a citizen of Mexico. Agent Ortiz asked the passenger if he had any immigration documents that would allow him to legally enter or remain in the United States. The passenger stated that he did not have any documents. The passenger also stated that he did not know Defendant. The passenger stated that Defendant picked him up at a gas station near San Ysidro, California.

The passenger was arrested and transported to the Border Patrol Station for processing. Defendant was also arrested and transported to the Border Patrol Station. At the station, Defendant stated that he earlier crossed the border into Mexico to visit his girlfriend and that on the way back he encountered the passenger who needed a ride to Los Angeles. A 72 hour lane check revealed that Defendant's vehicle had not crossed into the San Ysidro Port of Entry on October 15, 2007, but Defendant's vehicle had crossed twice on October 14, 2007. Defendant stated that he did not cross on those occasions. Agents determined that the passenger was not in the country legally and he was voluntarily returned to Mexico. Defendant's vehicle was seized.

## C.    VEHICLE SCREENING

On October 19, 2007, USBP Agent James Harlan conducted an initial screening on Defendant's seized vehicle at the asset forfeiture office in San Ysidro, California. During a non-intrusive x-ray screening of the vehicle, Customs and Border Protection Officers De Jesus and Olsen noticed an anomaly in the vehicle's rear quarter panels. Agent Harlan removed the quater panels and discovered 7 cellophane wrapped packages weighing 13.2 pounds. Agent Harlan conducted a field test on the substance contained within the packages and the substance tested positive for methamphetamine.

The packages were delivered to the Drug Enforcement Administration, Southwest Laboratory for testing. The laboratory analysis revealed a net weight of 3.11 kilograms of methamphetamine at 99.4% purity. The amount of actual methamphetamine is 3.091 kilograms.

## D.    RECORDS CHECKS

A check of the Treasury Enforcement Communication System indicates that Defendant was arrested at the San Ysidro, California, Port of Entry on March 2, 2007, for attempting to elude inspection.

1    **E.    VEHICLE REGISTRATION**

2        California Department of Motor Vehicles' records indicate that Isabel Cruz is the registered

3    owner of the Mazda MPV mini-van driven by the Defendant.  These records also indicate that the

4    vehicle was sold on July 17, 2007, to Carlos Jarquin Velasco.

5    **F.    CRIMINAL HISTORY**

6        Defendant has two prior traffic citations from 2005.

7                                        **III.**

8                              **DEFENDANT'S MOTIONS**

9    **A.    THE GOVERNMENT WILL COMPLY WITH DISCOVERY OBLIGATIONS**

10        The Government intends to fully comply with its discovery obligations under Brady v. Maryland,

11    373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal

12    Procedure.  The Government anticipates that most discovery issues can be resolved amicably and

13    informally, and has addressed Defendant's specific requests below.

14                        **(1)    The Defendants' Statements**

15        The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide

16    to Defendant the substance of Defendant's oral statements and Defendant's written statements.  The

17    Government has produced all of Defendant's written statements that are known to the undersigned

18    Assistant U.S. Attorney at this date and has also produced all available videotapes and/or audiotapes.

19    If the Government discovers additional oral or written statements that require disclosure under Rule

20    16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

21        The Government has no objection to the preservation of the handwritten notes taken by any of

22    the Government's agents and officers.  See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976)

23    (agents must preserve their original notes of interviews of an accused or prospective government

24    witnesses).  However, the Government objects to providing Defendant with a copy of any rough notes

25    at this time.  Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those

26    notes have been accurately reflected in a type-written report.  See United States v. Brown, 303 F.3d 582,

27    590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not

28    require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and

                                        4

a report).  The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness.  United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980).  The rough notes in this case do not constitute "statements" in accordance with the Jencks Act.  See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms).  The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment.  Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient).  If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

### (2) Arrest Reports, Notes and Dispatch Tapes

The United States has provided Defendant with arrest reports.  As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

### (3) Brady Material

Again, the United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment.  Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case.  As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality."  Id. at 774-775 (citation omitted).

1   The United States will turn over evidence within its possession which could be used to properly

2   impeach a witness who has been called to testify.

3   Although the United States will provide conviction records, if any, which could be used to

4   impeach a witness, the United States is under no obligation to turn over the criminal records of all

5   witnesses.  United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976).  When disclosing such

6   information, disclosure need only extend to witnesses the United States intends to call in its case-in-

7   chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

8   1305, 1309 (9th Cir. 1979).

9   Finally, the United States will continue to comply with its obligations pursuant to United States

10  v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

11  **(4)    Sentencing Information**

12  Defendant claims that the United States must disclose any information affecting Defendant's

13  sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83

14  (1963).  The United States respectfully contends that it has no such disclosure obligation under Brady.

15  The United States is not obligated under Brady to furnish a defendant with information which

16  he already knows.  United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986).  Brady is a rule of

17  disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the

18  defendant.  In such case, the United States has not suppressed the evidence and consequently has no

19  Brady obligation.  See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

20  But even assuming Defendant does not already possess the information about factors which

21  might affect their guideline range, the United States would not be required to provide information

22  bearing on Defendants' mitigation of punishment until after Defendants' conviction or plea of guilty and

23  prior to their respective sentencing dates.  See United States v. Juvenile Male, 864 F.2d 641, 647 (9th

24  Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when

25  the disclosure remains in value.").  Accordingly, Defendant's demand for this information is premature.

26  **(5)    Defendant's Prior Record.**

27  The United States has already provided Defendant with a copy of his criminal record in

28  accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

6

**(6)**    <u>**Proposed 404(b) Evidence and 609 Evidence**</u>

Should the United States seek to introduce any similar act evidence pursuant to Federal Rules of Evidence 404(b) or 609, the United States will provide Defendant with notice of its proposed use of such evidence and information about such bad act at the time the United States' trial memorandum is filed.

At this time, the United States intends to introduce as evidence Defendants June 17, 2007, apprehension for alien smuggling at the San Ysidro, Port of Entry to show absence of mistake and knowledge.

**(7)**    <u>**Evidence Seized**</u>

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial.  <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984), <u>cert. denied</u>, 474 U.S. 953 (1985).

**(8)**    <u>**Preservation of Evidence**</u>

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules.  However, the United States objects to Defendant's blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.  The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

//

7

1    Again, the United States will continue to comply with its obligations pursuant to <u>United States</u>

2    <u>v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

3                    **(9)    Tangible Objects**

4    The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing

5    Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects

6    seized that is within its possession, custody, or control, and that is either material to the preparation of

7    Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at

8    trial, or was obtained from or belongs to Defendant.   The Government need not, however, produce

9    rebuttal evidence in advance of trial.  <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

10                    **(10)    Evidence of Bias or Motive to Lie**

11    The United States is unaware of any evidence indicating that a prospective witness is biased or

12    prejudiced against Defendant.  The United States is also unaware of any evidence that prospective

13    witnesses have a motive to falsify or distort testimony.

14                    **(11)    Impeachment Evidence**

15    As stated previously, the United States will turn over evidence within its possession which could

16    be used to properly impeach a witness who has been called to testify.

17                    **(12)    Criminal Investigation of Government Witness**

18    Defendant is not entitled to any evidence that a prospective witness is under criminal

19    investigation by federal, state, or local authorities.  "[T]he criminal records of such [Government]

20    witnesses are not discoverable." <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976); <u>United</u>

21    <u>States v. Riley</u>, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution

22    witnesses are not discoverable under Rule 16, rap sheets are not either); <u>cf.</u> <u>United States v. Rinn</u>, 586

23    F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no

24    discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records

25    of the Government's intended witnesses.") (citing <u>Taylor,</u> 542 F.2d at 1026).

26    The Government will, however, provide the conviction record, if any, which could be used to

27    impeach witnesses the Government intends to call in its case-in-chief.   When disclosing such

28    information, disclosure need only extend to witnesses the United States intends to call in its case-in-

8

1    chief.  United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d

2    1305, 1309 (9th Cir. 1979).

3                    **(13)    Evidence Affecting Perception, Recollection, or Truth-Telling**

4            The United States is unaware of any evidence indicating that a prospective witness has a problem

5    with perception, recollection, communication, or truth-telling.

6                    **(14)    Witness Addresses**

7            The United States has already provided Defendant with the reports containing the names of the

8    agents involved in the apprehension and interviews of Defendant.  A defendant in a non-capital case,

9    however, has no right to discover the identity of prospective Government witnesses prior to trial.  See

10   Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th

11   Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103

12   F.23d 837, 841 (9th Cir. 1996).   Nevertheless, in its trial memorandum, the United States will provide

13   Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of

14   such a witness list is not required.  See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United

15   States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).  The United States is not aware of any "tips" provided

16   by anonymous or identified persons that resulted in Defendant's arrest.

17           The United States objects to Defendant's request that it provide a list of every witness to the

18   crimes charged who will not be called as a Government witness.  "There is no statutory basis for

19   granting such broad requests," and a request for the names and addresses of witnesses who will not be

20   called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)."  United States v. Hsin-Yung, 97 F.

21   Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

22   The United States is not required to produce all possible information and evidence regarding any

23   speculative defense claimed by Defendant.  Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam)

24   (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory

25   evidence are not subject to disclosure under Brady).

26                    **(15)    Witnesses Favorable to the Defendant**

27           As stated earlier, the Government will continue to comply with its obligations under Brady and

28   its progeny.  The Government is not aware of any witnesses who have made an "arguably favorable

9

1    statement concerning the defendant or who could not identify him or who w[ere] unsure of his identity,

2    or participation in the crime charged." [Def. Mtn. at 6.]

3                    **(16)    Statements Relevant to the Defense**

4          To reiterate, the United States will comply with all of its discovery obligations. However, "the

5    prosecution does not have a constitutional duty to disclose every bit of information that might affect the

6    jury's decision; it need only disclose information favorable to the defense that meets the appropriate

7    standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted). Further, Defendant is not

8    entitled to the Grand Jury transcripts.

9                         **(17)    Jencks Act Material**

10          The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on

11    direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks

12    Act) in the Government's possession that was made by the witness relating to the subject matter to

13    which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written

14    statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially

15    verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement

16    by the witness before a grand jury. 18 U.S.C. § 3500(e).   If notes are read back to a witness to see

17    whether or not the government agent correctly understood what the witness was saying, that act

18    constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d

19    1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the

20    Government is only required to produce all Jencks Act material after the witness testifies, the

21    Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any

22    needless delays.

23                         **(18)    Giglio Information**

24          As stated previously, the United States will comply with its obligations pursuant to Brady v.

25    Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991),

26    and Giglio v. United States, 405 U.S. 150 (1972).

27    //

28    //

10

1

          **(19)**    **Law Enforcement Personnel Files**

2

        The United States will continue to comply with its obligations pursuant to <u>United States v.</u>

3

<u>Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

4

        **B.**    **DEFENDANT'S SUPPRESSION MOTION SHOULD BE DENIED**

5

             **1.**    **Defendant Has Failed to Provide a Sworn Declaration**

6

        Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal

7

Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress <u>only</u> when

8

the defendant adduces specific facts sufficient to require the granting of the defendant's motion. <u>United</u>

9

<u>States v. Batiste</u>, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress,

10

failed to dispute any material fact in the government's proffer. In these circumstances, the district court

11

was not required to hold an evidentiary hearing."); <u>United States v. Moran-Garcia</u>, 783 F. Supp. 1266,

12

1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was

13

insufficient to require evidentiary hearing on defendant's motion to suppress statements). Specifically,

14

Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall

15

be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either

16

party fails to properly support its motion for opposition." Here, Defendant has failed to support her

17

allegations with a declaration, in clear opposition to Local Rule 47.1(g). The Ninth Circuit has held that

18

a District Court may properly deny a request for an evidentiary hearing on a motion to suppress evidence

19

because the defendant did not properly submit a declaration pursuant to a local rule. <u>United States v.</u>

20

<u>Wardlow</u>, 951 F.2d 1115, 1116 (9th Cir. 1991).

21

             **2.**    **Defendant's Secondary Statements Should Not Be Suppressed**

22

        Defendant's statements made prior to his arrest were made in the context of routine questioning

23

by a United States Border Patrol Agent, the type of questions which have been found by the Supreme

24

Court and the Ninth Circuit to be insufficient to trigger constitutional protections. Detaining a person

25

for routine border questioning is not custodial. <u>United States v. Troise</u>, 796 F.2d 310, 314 (9th Cir.

26

1986); <u>see also</u> <u>United States v. Galindo-Gallegos</u>, 244 F.3d 728, 731 (9th Cir.), <u>modified by</u> 255 F.3d

27

1154 (9th Cir. 2001). The <u>Miranda</u> requirement applies only when a defendant is in custody and

28

1   undergoes custodial interrogation.  The police do not need to give <u>Miranda</u> warnings <u>before</u> the

2   defendant is in custody.  <u>United States v. Booth</u>, 669 F.2d 1231, 1237 (9th Cir. 1981).

3       Defendant alleges that his statements at secondary inspection should be suppressed because he

4   was not <u>Mirandized</u>.  The facts in our case indicate that Defendant was  not in custody while in the

5   secondary inspection area and therefore <u>Miranda</u> would not apply.  Defendant was reasonably detained

6   while the border patrol agent conducted an ordinary immigration inspection.  The law clearly indicates

7   that being detained for this purpose is permissible.  In <u>United States v. Doe</u>, 219 F.3d 1009 (9th Cir.

8   2000), the Ninth Circuit found that the juvenile defendant was not in custody although he was detained

9   at the security office while his truck was undergoing inspection at secondary inspection at the San

10  Ysidro, California, Port of Entry.  <u>Id.</u> at 1014.  Rather, the Ninth Circuit found that the defendant in that

11  case was in custody only after the narcotics were discovered and defendant was placed in a locked cell.

12  <u>Id.</u>  <u>See</u> <u>also</u> <u>Stansbury v. California</u>, 114 S.Ct. 1526 (1994) (defendant must be "in custody" to trigger

13  need for <u>Miranda</u> warnings); <u>Berkemer v. McCarty</u>, 468 U.S. 442 (1984) (police officer whose

14  "observations lead him reasonably to suspect" that an individual has committed a crime, may briefly

15  detain that person to investigate the circumstances that provoked the officer's suspicions); <u>United States</u>

16  <u>v. Manasen</u>, 909 F.2d 1357, 1358-59 (9th Cir. 1990) (routine questioning by customs officials is

17  normally not custodial interrogation that triggers <u>Miranda</u>); <u>United States v. Troise</u>, 796 F.2d 310, 314

18  (9th Cir. 1986) (same); <u>United States v. Woods</u>, 720 F.2d 1022 (9th Cir. 1983) (brief questioning at

19  airport based upon reasonable suspicion did not trigger <u>Miranda</u>).

20      Prior to making his statement in the secondary inspection area, Defendant was never told he was

21  under arrest, never handcuffed, and never even accused of a crime.  Defendant was never forcibly

22  removed or restrained, and was only detained for a short period of time prior to the statements.  The

23  Defendant's referral to the secondary inspection area did change the nature of this brief immigration

24  inspection into a custodial interrogation.  Defendant's statements were not made under circumstances

25  requiring <u>Miranda</u> warnings and Defendant's motion to suppress those statements should, therefore, be

26  denied.

27  //

28  //

3.     **Defendant's Statements at the Border Patrol Station**

After being questioned at the San Clemente Checkpoint secondary area, Defendant was arrested and taken to the U.S. Border Patrol Station for processing.  The reports do not indicate that Defendant was advised of his <u>Miranda</u> rights prior to questioning.  Because this questioning appears to have been done in a custodial setting, <u>Miranda</u> warnings were required and the statements are not admissible in the Government's case in chief, absent such warning.  These statements appear, however, to have been made voluntarily, as such, they are admissible as impeachment evidence should the Defendant testify at trial.

C.     <u>**LEAVE TO FILE FURTHER MOTIONS**</u>

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV.**

<u>**CONCLUSION**</u>

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions except where unopposed.

DATED: January 27, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney


S/ A. Dale Blankenship
A. DALE BLANKENSHIP
Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: Dale.Blankenship@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) | Case No. 08CR0020-BTM |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| JUAN RAFAEL ZAFRA-GOMEZ, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED THAT:

I, A. DALE BLANKENSHIP, am a citizen of the United States and am at least eighteen years of age.  My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action.  I have caused service of Government's Response and Opposition to Defendant's Motions to: 1) compel discovery; 2) suppress statements; and 3)  leave to file further motions, together with statement of facts and memorandum of points and authorities on the following by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Lee Plummer, Esq.
Attorney for Defendant
Irafam@aol.com

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None.

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 27, 2008.

s/ A. Dale Blankenship
A. DALE BLANKENSHIP